# 26-6337-cr(L), 23-6482-cr(CON)

# United States Court of Appeals

### *for the*

# Second Circuit

—◆—

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

RYAN DIAZ, AKA Rico, MELISSA CONCEPCION,

*Defendants,*

MARTIN CONCEPCION, AKA Tito, MICHAEL VALDEZ, AKA Bigga,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT MICHAEL VALDEZ

ANDREW H. FREIFELD, ESQ.
*Attorney for Defendant-Appellant
    Michael Valdez*
P.O. Box 3196
New York, New York 10008
(917) 553-6030

COUNSEL PRESS    (800) 4-APPEAL • (325983)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………… iv

JURISDICTIONAL STATEMENT……………………………….. 1

PROCEDURAL POSTURE……………………………………… 2

ISSUES PRESENTED…………………………………………. 2

STATEMENT OF FACTS……………………………………… 3

    The Offense Conduct……….………………………………. 3

    The Indictment………………………………………………… 5

    The Superseding Information
       and the Plea Agreement…………………………………… 5

    The Change of Plea Hearing……………………………………… 7

    The Presentence Investigation Report…….…………………… 8

        Valdez's Children……………………………..………………… 8

        Criminal History……………………………………….. 9

        Proposed Special Conditions
         of Supervised Release…….………………………….…… 9

    The Parties' Sentencing Memoranda……….…………………… 10

    Sentencing……………………….………………..…………… 11

    Judgment and the Notice of Appeal……………………………… 13

i

Page

ARGUMENT……………………………………………………….    14

I.    THE IMPOSITION OF A SPECIAL CONDITION
      PROHIBITNG VALDEZ FROM VIEWING ADULT
      PORNOGRAPHY WITHOUT PRIOR APPROVAL
      FROM THE SEX-OFFENDER TREATMENT
      PROVIDER WAS UNLAWFUL………….…………….....    14

      A.    Summary of Point I Argument……………………….    14

      B.    The Record Relating to the Prohibition
            Against Viewing Adult Pornography………..…………….    15

      C.    The Appeal Waiver Is No Bar to Review of
            the Special Conditions of Supervised Release……………...    17

      D.    Standard of Review and Applicable Law…………………    17

      E.    The Inclusion in the Written Judgment of the
            Prohibition Against Viewing Adult Pornography
            Was Unlawful Because It Was Not Pronounced
            Orally At Sentencing……………………………………….…    20

      F.    The District Court Did Not Provide Any Reasons
            For Imposing The Ban Against Viewing Adult
            Pornography And Reasons For Such a Ban Are
            Are Not Self-Evident.……………………………………    23

Page

II.  THE IMPOSITION OF THE SPECIAL CONDITION
     PROHIBITING VALDEZ FROM HAVING CONTACT
     WITH PERSONS UNDER THE AGE OF 18, OTHER
     THAN HIS CHILDREN, WITHOUT PERMISSION
     FROM THE PROBATION OFFICE WAS
     UNLAWFUL…………………………………………………….    25

     A.   Summary of Point II Argument……………………………    25

     B.   The Record Relating to the Condition Prohibiting
          Valdez From Having Contact With Minors………………    26

     C.   Standard of Review and Applicable Law…………………    26

     D.   The District Court Failed to Set Out Any Reasons
          for Imposing the No-Contact with Persons Under
          the 18 Condition and the Reasons for its Imposition
          Are Not Self-Evident………………………………………    27

     E.   Special Condition No. 5 Is Unconstitutionally
          Vague…………………………………………………………    34

CONCLUSION………………………………………………………    35

CERTIFICATE OF COMPLIANCE…………………………………    36

ADDENDUM…………………………………………………………    37

iii

## TABLE OF AUTHORITIES

Pages(s)

Statutes

18 USC § 2………………………………………………….    2, 5

18 USC § 1201(a)(1)……………………………………….    5

18 USC § 1201(b)………………………………………….    5

18 USC § 1201(c)………………………………………….    5

28 USC § 1291……………………………………………    1

18 USC § 1591(a)(1)……………………………………….    2, 5

18 USC § 1591(a)(2)……………………………………….    2, 5

18 USC § 1591(b)(1)……………………………………….    5

18 USC § 1591(b)(2)……………………………………….    2, 5

18 USC § 1591(c)………………………………………….    2, 5

18 USC § 1594(c). …………………………………………    5

.18 USC § 2250………….…………………………………    20

18 USC § 3231…………………………………………….    1

18 USC § 3583(d)……………………..……………………    *passim*

New York Penal Law § 65.05……………………………….    32

New York Penal Law § 260.10……………………………..    32

iv

<u>Pages(s)</u>

<u>Rules and Sentencing Guidelines</u>

Fed. R. Crim. P. 43(a)(3) …………………………………..     19, 22

USSG § 5D1.3(d).………………………………………….     *passim*

<u>Cases</u>

*Moore v. East Cleveland*, 431 U.S. 494 (1977)…………………..     28

*United States v. A-Abras Inc.,* 185 F.3d 26 (2d Cir. 1999)………     19

*United States v. Betts*, 886 F.3d 198 (2d Cir. 2018)………………     18, 27

*United States v. Birkedahl*, 973 F.3d 49 (2d Cir. 2020)…………..     19

*United States v. Bleau*, 930 F.3d 35 (2d Cir. 2019)………………     27

*United States v. Burden,* 860 F. 3d 45 (2d Cir. 2017)…………….     17

*United States v. Carlineo*, 998 F. 3d 533 (2d Cir. 2021)…………     18

*United States v. Cavera* , 550 F.3d 180 (2d Cir. 2008) (en banc)…     18

*United States v. Cunningham*, 292 F.3d 115 (2d Cir. 2002)………     17

*United States v. Doe*, 79 F. 3d 1309 (2d Cir. 1996)………………     29

*United States v. Eaglin*, 913 F. 3d 88 (2d Cir. 2019)………………     17, 18,23

*United States v. Germosen,* 139 F.3d 120 (2d Cir. 1998)…………     19

*United States v. Jacques*, 321 F. 3d 255 (2d Cir. 2003)…………..     20

*United States v. Jenkins*, 854 F. 3d 181, 194 (2d Cir. 2017)……..     17

v

Pages(s)

*United States v. Johnson*, 446 F.3d 272 (2d Cir. 2006)…………..    17

*United States v. Leonard*, 21-2762-cr (2d Cir. April 14, 2023)….    23

*United States v. MacMillan*, 544 F.3d 71 (2d Cir. 2008)………..    17

*United States v. Myers*, 426 F. 3d 117 (2d Cir. 2005)……………    28

*United States v. Oladimeji*, 463 F.3d 152 (2d Cir. 2006)………..    17

*United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016)……………    19

*United States v. Rodriguez*, 22-1820-cr (2d Cir. Dec. 5, 2023)…    22

*United States v. Robinson*, # 22-835-cr (2d Cir. June 15, 2023)…    24

*United States v. Rosario*, 386 F.3d 166 (2d Cir. 2004)………….    19, 22

*United States v. Simmons*, 343 F.3d 72 (2d Cir. 2003)………….    34

*United States v. Truscello,* 168 F. 3d 61 (2d Cir. 1999)…………    19, 22

*United States v. Young*, 910 F.3d 665 (2d Cir. 2018)……………    19

*United States v. Washington*, 904 F.3d 204 (2d Cir. 2018)………    20, 21, 22

*United States v. Weiskopf*, # 20-199 (2d Cir. Jan. 26, 2021)……..    28

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------------------------:
United States of America,                            :
                              Appellee,              :
                                                     :
                   vs.                               :        Dkt. ## 23-3667(L),
                                                     :                 23-6482 (CON)
Michael Valdez,                                      :
                   Defendant-Appellant.              :
-----------------------------------------------------:

Michael Valdez, by his undersigned counsel, respectfully submits this brief in

support of his appeal of a judgment of conviction and sentence entered April 20,

2023, in the United States District Court for the Southern District of New York (Hon.

J. Paul Oetken, *USDJ*), under docket # 19-cr-883-1-JPO.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 18 USC § 3231 because the case

involves charged "offenses against the laws of the United States". This Court has

jurisdiction under 28 USC § 1291 because the order appealed from is a "final

decision[ ] of the district court[ ]". A final judgment of conviction and sentence

entered April 20, 2023. A timely notice of appeal was filed on April 28, 2023.[1]

---

[1] An appendix accompanies this filing, and the Presentence Investigation Report
(the "PSR") is being filed here under seal. As used herein, a number following "A:"
refers to a page in the appendix. The district court docket sheet, the judgment and
the notice of appeal are at A:1-13, A:179-85, and A:186-87, respectively. A number
following "DC Dkt. #" refers to the entry number of a document on the district court
docket sheet. A number following "2d Cir. Dkt. #" refers to the entry number of a
document on this court's docket sheet.

1

## PROCEDURAL POSTURE

The action commenced on November 9, 2019. On March 18, 2022, with a plea agreement, Valdez pled guilty to a single count of sex trafficking of a minor in violation of 18 USC §§ 1591(a)(1), (a)(2), (b)(2), (c) and 2. The agreement included an appeal waiver: Valdez will not appeal any sentence below 135 months' imprisonment. The district court imposed sentence on April 18, 2023, including a term of imprisonment of 156 months, to be followed by a term of supervised release of five years, and eight special conditions of supervised release. A judgment of conviction and sentence entered on April 20, 2023, and Valdez filed a notice of appeal on April 28, 2023. Detained here since November 10, 2019 (PSR, p. 1) and serving the sentence, Valdez appeals.

## ISSUES PRESENTED

I. Whether imposition of a special condition of supervised release prohibiting Valdez from viewing, accessing, possessing, or downloading adult pornography unless approved by a sex-offender treatment provider ("Condition # 3") constitutes an unlawful modification of the sentence where it was not imposed orally at the sentencing, and whether the condition is unreasonable in any event?

II. Whether imposition of a special condition of supervised release prohibiting Valdez from having deliberate contact with persons under the age of 18, except his children, without approval from the probation office ("Condition # 5"), is unreasonable?

## STATEMENT OF FACTS

The Offense Conduct

The offense conduct involved the sex trafficking of a 16-year old female during October-November 2019 in Bronx County, New York, for which four persons were convicted in this case: Michael Valdez, Ryan Diaz, Melissa Concepcion, and Martin Concepcion.  Valdez, Diaz, and Melissa Concepcion pled guilty; Martin Concepcion was convicted by jury; the victim testified at the Concepcion trial under an assumed name, Camilla Rodriguez.[2]  All references to "Concepcion" hereinafter refer to Martin Concepcion.

On or about September 26, 2019, Ms. Rodriguez ran away from home.  (PSR ¶ 10)  On or about October 8, 2019, Valdez, Diaz, and Concepcion approached Ms. Rodriguez in the street in the Bronx, New York, "with the goal of getting her to engage in prostitution".  (PSR ¶¶ 10-11)  They went to an apartment in the Bronx where Valdez, Diaz, Concepcion, and Diaz's mother resided (the "184th Street

---

[2]  The AUSA here informs your undersigned that "Camilla Rodriguez" is an assumed name, and that the government has no objection to the filing of her unredacted testimony as part of our appendix here.  The testimony, at A:57-146, shows that Ms. Rodriguez knew Valdez as "Bigga", Diaz as "Rico", Melissa Concepcion as "Beba", and Martin Concepcion as "Tito".  (A:58)

Apartment"). (A:62) The victim said that she was 18 years old. (A:147) Valdez and Martin Concepcion had sex with her that night.[3] (A:65)

Thereafter, through early November 2019, the defendants caused the victim to engage in acts of prostitution at two Bronx apartments, the 184th Street Apartment and another on Valentine Avenue. (PSR ¶¶ 12-14) The victim delivered the money that she collected from commercial sex buyers directly to Valdez, Diaz, or Concepcion. (A:79, 91) The defendants used the internet to solicit buyers, including by posting naked pictures of Ms. Rodriguez that Concepcion had taken. (A:52, 66-67) In early November 2019, Ms. Rodriguez, who had been residing at the 184th Street Apartment, went to reside elsewhere, then returned after Valdez threatened her. (PSR ¶ 22) Ms. Rodriguez testified that Valdez assaulted her on one occasion, which occurred after her return, (A:104) Thereafter, she began texting her family. (PSR ¶ 22) On November 7, 2019, law enforcement officers looking for Ms. Rodriguez encountered her on the street. (PSR, ¶ 23)

This action commenced by the filing of a complaint on November 9, 2019 (A:14-19), and Valdez was arrested on November 10, 2019. (PSR ¶ 28)

---

[3] The PSR at ¶ 11 states that Valdez and Concepcion had sexual intercourse with the victim "multiple times" that night; however, the victim's testimony, that the intercourse occurred in the bathroom while other visitors were present at the apartment, suggests that it was one time. (A:64-65)

4

The Indictment

An indictment filed here December 10, 2019 (A:20-27), charges Valdez and Diaz in four counts. The first count charges Conspiracy to commit sex trafficking in violation of 18 USC § 1594(c). (A:20-21) The second count charges Sex trafficking in violation of 18 USC §§ 1591(a)(1), (a)(2), (b)(1), (b)(2), (c), and 2. (A:21-22) The third count charges Conspiracy to commit kidnapping in violation of 18 USC § 1201(c). (A:22-23) The fourth count charges Kidnapping in violation of 18 USC §§ 1201(a)(1) and (b), and (2). (A:23-24)

The Superseding Information and the Plea Agreement

In a filing of March 18, 2022, Valdez waives prosecution by indictment and agrees to be prosecuted by information. (A:28) Also on that date, the government files a superseding single-count information (the "S3 Information"), charging "Sex Trafficking of A Minor" in violation of 18 USC §§ 1591(a)(1), (a)(2), (b)(2), (c), and (2) ("Count One") (A:29-32) Count One charges that:

> Between at least in or about October 2019 up to and including November 7, 2019, in the Southern District of New York and elsewhere, MICHAEL VALDEZ, a/k/a "Bigga", the defendant, willfully and knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means one and more persons, and did benefit, financially and by receiving things of value, from participation in a venture that engaged in such acts, having had a reasonable opportunity to observe such persons, knowing and in reckless disregard of the fact that one and more such

5

persons had not attained the age of 18 years and would be caused to engage in one and more commercial sex acts, to wit, VALDEZ recruited an individual under the age of 18 ("Victim-1"), having had a reasonable opportunity to observe Victim-1, to engage in commercial sex acts in the Bronx, New York, and elsewhere, advertised Victim-1 for that purpose, and caused Victim-1 to engage in such commercial sex acts, the proceeds of which were kept by VALDEZ.

(A:29-30)[4]

By a plea agreement dated March 1, 2022 (2d Cir. Dkt # 36, Ex. A) (the "Agreement"), Valdez agrees to plead guilty to Count One; he also acknowledges having "physically assaulted and threatened the victim". (*Id.* at p. 2, n. 1) The government agrees not to further prosecute Valdez "for sex trafficking Victim-1, who was sixteen years old at the time, between in or around October 2019, and on or about November 7, 2019 in the Bronx, New York.", and to dismiss any open counts against Valdez at sentencing. (*Id.* at p. 1)

The Agreement (accurately) recites that "Count One carries a maximum term of imprisonment of life; a mandatory minimum term of imprisonment of 10 years; a maximum term of supervised release of life [and] a mandatory minimum term of supervised release of five years". (*Id.*)

---

[4] The text of much of 18 USC § 1591 is set out in a addendum attached hereto, *infra* at pp. 37-38.

6

The parties stipulate that Valdez's sentencing range under the U.S. Sentencing Guidelines is 135-168 months, which the Agreement calls the "Stipulated Guidelines Range", based on an offense level of 33 and a Criminal History Category of I, (*Id.* at pp. 2-3)

The Agreement contains an appeal waiver, providing, *inter alia*, that neither party will appeal "any sentence within or below the Stipulated Guidelines Range of 135 to 168 months' imprisonment". (*Id.* at p. 4)

The Change of Plea Hearing

At a change of plea hearing held on March 18, 2022 (A:33-47), the district court accepted Valdez's guilty plea to Count One. Valdez stated as follows when asked what he did that makes him believe that he is guilty of the charged offense:

| | |
|---|---|
| THE DEFENDANT: | From early October 2019 to November 7, 2019, I enticed and caused someone to work as a prostitute in the Bronx. |
| THE COURT: | I'm sorry. I lost you there for a second. I coerced and then – |
| THE DEFENDANT: | I coerced someone to work as a prostitute in the Bronx. I did not know this was a person -- this person was a minor, but I had a reasonable opportunity to observe her. I posted on the Internet and advertised the commercial sex acts. At times I made verbal threats. When I did this, I knew prostitution was illegal. |

7

(A:44-45)  In addition, Valdez acknowledges that he is waiving his right to appeal any sentence "as long as it's … 168 months or less"  (A:43-44)

The Presentence Investigation Report

The final PSR filed by the U.S. Probation Office is dated July 19, 2022.  The PSR states that Valdez is an African-American male, born in 1992 in New York, New York, where he was raised.  (PSR, p, 2 and ¶ 63)

Valdez's Children

Persons' ages as set out in this paragraph are derived from the PSR and are as of its date.  Valdez is 30 years old.  (PSR, p. 2)  He has been in an intimate relationship with Keyana Zulu, age 27, since 2013 or 14.  (PSR, ¶ 68)  Valdez has four children: two with Zulu: Storiee, age six, and Michael, Jr., age four.  (*Id*.)  Valdez also helped raise Zulu's child, Jeremiah, age 9.  (*Id*.)  Valdez's other child, Riley, age 6, is from a "consensual relationship with Sierra Carter, age 24".  (PSR ¶ 69)  "Per Valdez, his children enjoy good health, and they are performing well in school".  (PSR ¶ 68)  Valdez's mother confirms that Valdez "helped care for … his children".  (PSR ¶ 73)

<u>Criminal History</u>

Consistent with the stipulation in the Agreement, the PSR states that Valdez's

criminal history category is I. The PSR notes that on February 9, 2016, Valdez was

convicted in New York County Criminal Court of Endangering the Welfare of A

Child, and sentenced to a conditional discharge with a 5-year order of protection.

The PSR states:

> The underlying court confirmed the conviction and sentencing
> details. Per an NYPD arrest report, Valdez was arrested inside of 221
> East 123rd Street, New York, New York, pursuant to an active
> warrant/investigation card submitted by Manhattan Special Victims
> Squad investigators, related to criminal complaint of rape in the third
> degree. The arrest report lists the date of occurrence as March 10,
> 2015.
>
> Per court documents, on March 10, 2015, while in the vicinity of
> Catherine Slip, New York, New York, the defendant engaged in
> sexual intercourse with a female who was 15 years old.

(PSR ¶ 55)

Proposed Special Conditions
<u>of Supervised Release</u>

The PSR recommends that the court impose the following special conditions

of supervised release (among others):

> You shall undergo a sex-offense-specific evaluation and
> participate in an outpatient sex offender treatment and/or
> outpatient mental health treatment program approved by the
> U.S. Probation Office. You shall abide by all rules,
> requirements, and conditions of the sex offender treatment
> program(s), including submission to polygraph testing and

9

refraining from accessing websites, chatrooms, instant messaging, or social networking sites to the extent that the sex offender treatment and/or mental health treatment program determines that such access would be detrimental to your ongoing treatment. You will not view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider. You must waive your right of confidentiality in any records for mental health assessment and treatment imposed as a consequence of this judgment to allow the U.S. Probation Office to review the course of treatment and progress with the treatment provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the sex offender treatment provider and/or mental health treatment provider.

\*\*\*\*

You must not have deliberate contact with any child under 18 years of age, unless approved by the U.S. Probation Office. You must not loiter within 100 feet of places regularly frequented by children under the age of 18, such as schoolyards, playgrounds, and arcades. You must not view and/or access any web profile of users under the age of 18. This includes, but is not limited to, social networking websites, community portals, chat rooms or other online environment(audio/visual/messaging), etc. which allows for real time interaction with other users, without prior approval from your probation officer.

(PSR, pp. 29-30)


The Parties' Sentencing Memoranda

Defense counsel filed a sentencing memorandum on March 10, 2023. (DC Dkt. # 162) Citing to paragraphs 69-70 of the PSR, the memorandum states:

10

> Being a father has been one of Mr. Valdez's greatest accomplishments and he takes great pride in his children. He has good relationships with his children's mothers and, prior to his incarceration, saw his children every day. Since his incarceration, he speaks to his children on the phone at least once a day, and often twice a day. Because he knows what it is like to grow up without a father, he is determined to always be present in his children's lives. He understands that his actions have taken him away from his children during important years in their lives and he regrets how his conduct will affect them. However, he is going to do all he can to show them that he is not the man portrayed in the indictment and will continue to participate in programs offered through the BOP so that upon his release, he can be a better role model to all his children and support his family.

(DC Dkt. # 162, pp. 3-4) In letters that accompany the memorandum, a "close friend" writes that he is a "great father to his kids" who "mean[ ] the world to him". (DC Dkt. # 162-1 at p. 9 of 16), and his sister writes that he is "a proud and very active father in the lives of his 4 children". (*Id.* at p. 11 of 16)

The government filed a sentencing memorandum on April 12, 2023. (DC Dkt. # 167)

Sentencing

Sentence was imposed on April 18, 2023. (A:147-78) Neither party lodged objection to the factual portion of the PSR, and the district adopted "the facts in the presentence report as my findings of fact for sentencing". (A:149)

Defense counsel stated objections to the following proposed special conditions of supervised release as recommended in the PSR: (i) any prohibition against the viewing of adult pornography, (ii) any prohibition against loitering near

11

schools, and (iii) any prohibition against having any contact with persons under the age of eighteen. (A:159-60) In response to the latter objection, the district court stated: "I was going to make an exception for his own children". (A:160.)

The court imposed sentence: a term of imprisonment of 156 months, a term of supervised release of five years, the standard conditions of supervised release, certain special conditions of supervised release, no fine, and a special assessment of $100. (A:175-77)

Among the special conditions of supervised release imposed orally at sentencing, the court ordered:

> You will also participate in an outpatient mental health treatment program approved by the probation office as set forth in the presentence report.

> You shall undergo a sex offense-specific evaluation and participate in a sex offender treatment and/or outpatient mental health treatment program approved by probation. And you shall abide by the rules, requirements, and conditions of the sex offender treatment program, including submission to polygraph testing as set forth in the presentence report.

> ****

> You may not have deliberate contact with any child under 18 years of age unless approved by the probation office, with the exception of your children.

(A:1176-77) The oral pronouncement of special conditions did not include any ban on Valdez viewing adult pornography; the words or their like were not mentioned.

12

<u>Judgment and the Notice of Appeal</u>

The judgment, filed April 20, 2023 (A:179-85), sets out eight special conditions of Valdez's supervised release. (A:183) The third listed special condition ("Condition # 3") provides:

> You shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the U.S. Probation Office. You shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), including submission to polygraph testing and refraining from accessing websites, chatrooms, instant messaging, or social networking sites to the extent that the sex offender treatment and/or mental health treatment program determines that such access would be detrimental to your ongoing treatment. <u>You will not view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider</u>. You must waive your right of confidentiality in any records for mental health assessment and treatment imposed as a consequence of this judgment to allow the U.S. Probation Office to review the course of treatment and progress with the treatment provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the sex offender treatment provider and/or mental health treatment provider.

(*Id.*) (emphasis added)

The fifth listed special condition ("Condition # 5") provides:

> You shall not have deliberate contact with any child under the age of 18 other than your children, unless approved by the Probation Department.

13

(*Id*.)  The court did not impose the conditions recommended by the PSR prohibiting Valdez from loitering near places where children congregate, and from viewing "any web profile of users under the age of 18 … without prior approval from your probation officer".  (PSR, p. 30)

Valdez filed a notice of appeal on April 28, 2023.  (A:186-87).

ARGUMENT

I.

THE IMPOSITION OF A SPECIAL CONDITION PROHIBITNG VALDEZ FROM VIEWING ADULT PORNOGRAPHY WITHOUT PRIOR APPROVAL FROM THE SEX-OFFENDER TREATMENT PROVIDER WAS UNLAWFUL

A.  Summary of Point I Argument

Imposition of Condition # 3 in the written judgment (prohibiting the viewing of adult pornography without permission from a sex-offender treatment program) was procedurally and substantively unreasonable because (i) it was not pronounced orally at sentencing, (ii) the district court offered no reasons at sentencing that might support its imposition, and no such reasons are otherwise self-evident from the record, (iii) the condition is not reasonably related to the purposes of supervision set forth at 18 USC § 3583(d) and USSG § 5D1.3(b), and (iv) it involves a greater deprivation of liberty than is reasonably necessary to serve those purposes.

The case should be remanded to the district court with instructions to enter a modified judgment with the condition relating to adult pornography removed.

B.      The Record Relating to the Prohibition
        Against Viewing Adult Pornography

The PSR recommended that the court order Valdez, as a condition of the supervised release component of the sentence, to "participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the U.S. Probation Office", and further, that Valdez be ordered not to "view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider".[5]  (PSR, p. 29)

At sentencing, defense counsel articulated some of her objections to the PSR's proposed special conditions like so:

> It just seems like not to access or download pornography involving adults -- I just -- it wasn't like this was a continuing series of actions with multiple women.  It is one girl.
>
> A lot of these conditions seem to me to be tailored toward someone who was repeatedly engaged in sex trafficking over a long period of time with multiple victims, of which a number were children, which is not what happened in this particular case.  So a lot of them seem to be excessive to me.

(A:159)

---

[5]  The entirety of the special condition as proposed in the PSR is set out *supra* at pp. 9-10.

15

The court orally pronounced the following condition of supervised release (among others): "[y]ou shall undergo a sex offense-specific evaluation and participate in a sex offender treatment and/or outpatient mental health treatment program approved by probation" (A:176); the court never ordered, nor even mentioned, any condition relating to adult pornography.[6]

Despite the omission of any condition relating to adult pornography in the oral pronouncement at sentencing, the district court's written judgment prohibits Valdez from viewing adult pornography as follows:

> You shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the U.S. Probation Office. You shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), including submission to polygraph testing and refraining from accessing websites, chatrooms, instant messaging, or social networking sites to the extent that the sex offender treatment and/or mental health treatment program determines that such access would be detrimental to your ongoing treatment. You will not view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider…..

(A:183) (emphasis added)[7]

---

[6] The entirety of the special condition as pronounced at sentencing is set out *supra* at p. 12.

[7] The entirety of Condition # 3 as propounded in the judgment is set out *supra* at p. 13.

16

C.     The Appeal Waiver Is No Bar to Review of
       the Special Conditions of Supervised Release

Because no aspect of the appeal waiver in Valdez's plea agreement relates to any special conditions of supervised release that the court might impose at sentencing (2d Cir. Dkt. # 36, p. 4), Valdez's challenges to such conditions on this appeal do not fall within its scope. *United States v. Oladimeji*, 463 F.3d 152, 157 (2d Cir. 2006) (because appeal waivers must be construed "narrowly" given the government's greater bargaining power, and that it generally drafts the agreement, appellate challenge to restitution order must be deemed to fall outside the scope of the appeal waiver which related to the incarceratory portion of sentence). *See also United States v. Burden,* 860 F. 3d 45, 53-54 (2d Cir. 2017) (appeal waivers weren't "sufficiently specific" to capture defendants' appellate challenges to the imposed terms of supervised release); *United States v. (20)ingham*, 292 F.3d 115, 117 (2d Cir. 2002) (same).

D.     Standard of Review and Applicable Law

This court reviews "the imposition of conditions of supervised release for abuse of discretion and any related legal rulings de novo.". *United States v. Eaglin*, 913 F. 3d 88, 94 (2d Cir. 2019); *United States v. MacMillan*, 544 F.3d 71, 74 (2d Cir. 2008). *See also, United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006) (issues of law related to the imposition of a condition of supervised release are

17

reviewed *de novo*).  While a district court has broad discretion to impose conditions of supervised release, "this discretion is not boundless", and the Court is "required to carefully scrutinize unusual or severe conditions."  *United States v. Carlineo*, 998 F. 3d 533, 536 (2d Cir. 2021).

Sentencing decisions are reviewed for procedural and substantive reasonableness.  *United States v. Cavera* , 550 F.3d 180, 189 (2d Cir. 2008) (en banc).  "For a sentence to be procedurally reasonable, a District Court must 'make an individualized assessment when determining whether to impose a special condition of supervised release, and ... state on the record the reason for imposing it.'".  *Eaglin*, 913 F. 3d at 94, and "the failure to do so is error.  In the absence of such an explanation, we may uphold the condition imposed only if the district court's reasoning is self-evident in the record."  *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (citation and internal quotation marks omitted in *Eaglin* and *Betts* citations).

This Court deems a sentence to be substantively unreasonable where it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law.".  *Eaglin, supra*.  (citation and quotation marks omitted)

In addressing the parameters of a district court's discretion to impose special conditions of supervised release at sentencing, the Court has stated:

> As a general matter, "[a] court may order special conditions of supervised release" if they are "reasonably related" to the statutory

18

purposes of supervision: namely, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed to afford adequate deterrence"; "the protection of the public"; and "the rehabilitative and medical care needs of the defendant." *United States v. Parisi*, 821 F.3d 343, 348 (2d Cir. 2016) (internal quotation marks omitted). Special conditions "must also involve no greater deprivation of liberty than is reasonably necessary" to implement the statutory purposes of sentencing, and "must be consistent with any pertinent [Sentencing Commission] policy statements." *Id.* (internal quotation marks omitted).

*United States v. Birkedahl*, 973 F.3d 49, 53 (2d Cir. 2020). *See also, United States v. Germosen,* 139 F.3d 120, 131 (2d Cir. 1998). The listed "statutory purposes of supervision" are drawn from 18 USC § 3583(d) and USSG § 5D1.3(b).

Where there is an "actual inconsistency" between a condition of supervised release as announced orally at sentencing and the condition as set forth in the written judgment, this Court, relying on Fed. R. Crim. P. 43(a)(3), which requires defendant's presence at sentencing, holds that the oral pronouncement generally controls. *United States v. Truscello,* 168 F. 3d 61, 62 (2d Cir. 1999); *United States v. A-Abras Inc.,* 185 F.3d 26, 29 (2d Cir. 1999) ("[w]here an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control"). *See also, United States v. Young*, 910 F.3d 665, 670 (2d Cir. 2018) ("[i]nsofar as there is a variance between the written and oral conditions, the District Court's oral pronouncement controls."); *United States v. Rosario*, 386 F.3d 166, 168

19

(2d Cir. 2004) ("[i]t is well settled, as a general proposition, that in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls and any burdensome punishments or restrictions added in the written judgment must be removed") (citation omitted).

The issue of whether there is a discrepancy between the oral pronouncement of sentence and the written judgment presents an issue of law that is reviewed *de novo*. *United States v. Jacques*, 321 F. 3d 255, 262 (2d Cir. 2003).

E.     The Inclusion in the Written Judgment of the Prohibition
       Against Viewing Adult Pornography Was Unlawful
       Because It Was Not Pronounced Orally At Sentencing

Because Judge Oetken did not pronounce any prohibition against Valdez viewing adult pornography at sentencing, the inclusion of the prohibition in the written judgment constituted an unlawful modification of the sentence.

There is no basis for distinguishing the instant case from *United States v. Washington*, 904 F.3d 204 (2d Cir. 2018). There, defendant was convicted of failing to register as a sex offender in violation of 18 USC § 2250. The PSR recommended imposition of the following special condition of supervised release:

> You shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the United States Probation Office. You shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), *including submission to polygraph testing*…..

20

*Id*. at 206 (emphasis by the Second Circuit).[8] Defendant did not object to any aspect of the recommended condition. 904 F.3d at 207. In pronouncing the sentence orally, the district court did not include the condition relating to polygraph testing, ordering only that:

> The defendant also must undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the United States Probation Office.

*Id*. at 206-07. However, in the written judgment, the district court imposed the polygraph condition recommended in the PSR:

> Defendant shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the United States Probation Office. Defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), *including submission to polygraph testing…*.

*Id*. at 207.

Notwithstanding Washington's failure to object to the imposition of the polygraph condition at sentencing, this Court reviewed the discrepancy between the condition as pronounced orally and as set forth in the written judgment *de novo,* reasoning that Washington "could not have known before issuance of the written judgment that the District Court would include polygraph testing in the written

---

[8] The portion of the condition that we have not set out in the text addresses confidentiality waivers and allocation of costs. *Id.*

21

version of his sentence after omitting any mention of it from the spoken version."

(*Id* at 208)

As to the merits, this Court observed:

> The Federal Rules of Criminal Procedure provide that a defendant must be present at pronouncement of sentence. Fed. R. Crim. P. 43(a)(3). Accordingly, after a sentence has been pronounced, the written judgment may clarify the terms of the spoken sentence, *see United States v. Truscello*, 168 F.3d 61, 63 (2d Cir. 1999), but if there is a substantive discrepancy between the spoken and written versions of a defendant's sentence, the spoken version ordinarily controls, *United States v. Rosario*, 386 F.3d 166, 168–69 (2d Cir. 2004).

(*Id.*). The Court concluded that:

> the written judgment's additional language requiring "submission to polygraph testing" is an impermissible modification of the spoken sentence. Polygraph testing can be onerous for a defendant, who may feel at risk of incriminating him- or herself. It is also not a necessary or invariable part of sex-offender treatment. Many district judges require polygraph testing as part of the sex-offender-treatment condition in at least some cases. But we learned at oral argument that some district judges, including some judges in the district courts of this Circuit, never allow it.

(*Id.*)[9] Accordingly, the court remanded the case with instructions to enter a modified judgment with the offending condition deleted. *See also, United States v. Rodriguez*, 22-1820-cr, ECF No. 61 at p. 5-7 (2d Cir. Dec. 5, 2023) (case remanded with instructions to delete from written judgment a special condition requiring defendant to "undergo drug treatment evaluation, and if deemed necessary, participate in [an]

---

[9] It bears noting that Concepcion, convicted of the same offense as Valdez, was not subject to a condition prohibiting him from viewing adult pornography.

22

outpatient drug treatment program approved by the probation department" because condition had not been imposed orally at sentencing).

Based on the reasoning in *Washington* and the other cases cited therein and herein, this Court should remand this case to the district court with instructions to modify the judgment by deleting the ban against Valdez from viewing adult pornography.

F.   The District Court Did Not Provide Any Reasons For
      Imposing The Ban Against Viewing Adult Pornography
      And Reasons For Such a Ban Are Not Self-Evident

Not having referred to adult pornography at sentencing, the district court naturally didn't provide any reasons for prohibiting the viewing of it, and thereby erred. *United States v. Eaglin*, 913 F. 3d 88, 99 (2d Cir. 2019) ("we have routinely rejected bans on possession of adult pornography as a condition of supervised release where the district court failed adequately to connect the need for that condition to the defendant's likelihood of recidivism or to another sentencing factor").

Nor are reasons for the condition self-evident from the record; there is no evidence that Valdez's viewing of adult pornography led him to engage in sex trafficking; indeed, there is no evidence that Valdez has viewed any type of pornography ever. *See United States v. Leonard*, 21-2762-cr, ECF No. 92-1, pp. 4-6 (2d Cir. April 14, 2023) (summary order) (basis for ban on viewing adult pornography not self-evident where defendant was convicted of using a minor to

23

engage in sexually explicit conduct for the purpose of producing visual depictions thereof, and of distribution and possession of child pornography); *United States v. Robinson*, # 22-835-cr, ECF No. 86, pp. 3-5 (2d Cir. June 15, 2023) (summary order) (basis for ban on viewing adult pornography not self-evident where defendant's conviction involved using an online messaging website to instruct a 13-year old girl to engage in sexual acts with a person identified as her brother which defendant viewed in real time and recorded).

Under these circumstances, the prohibition fails to reasonably relate to any of the sentencing factors listed at 18 USC § 3583(d) and USSG § 5D1.3(b).

Significantly, if the prohibition against viewing adult pornography formed no part of Condition # 3, the condition requires Valdez to "refrain[ ] from accessing websites, chatrooms, instant messaging, or social networking sites to the extent that the sex offender treatment and/or mental health treatment program determines that such access would be detrimental to your ongoing treatment" anyway. (A:183) If the program to which he is assigned maintains a blanket rule against participants viewing adult pornography, then the prohibition in the special condition will be surplusage. On the other hand, if the program has no such *per se* prohibition, then putting the onus on Valdez to get special permission is unnecessarily burdensome, especially given the absence of evidence that the prohibition relates to any of the purposes of supervision. In other words, even if the condition may be deemed to

24

relate to a sentencing factor, the prohibition still involves a greater deprivation of liberty than is necessary to achieve those ends.

Nor can the condition be saved based on Valdez's ability to obtain a special dispensation from the sex-offender program to view adult pornography; either the ban relates to the sentencing factors listed at 18 USC § 3583(d) and USSG § 5D1.3(b) or it doesn't.

In sum, imposition of Condition # 3 was procedurally and substantively unreasonable, and the case should be remanded with instructions to enter a modified judgment that does not contain the portion of the special condition of Valdez's supervised release that currently orders him not to "view, access, possess, and/or download any pornography involving adults unless approved by the sex-offender specific treatment provider".  (A:183)

## II.

### THE IMPOSITION OF THE SPECIAL CONDITION PROHIBITING VALDEZ FROM HAVING CONTACT WITH PERSONS UNDER THE AGE OF 18, OTHER THAN HIS CHILDREN, WITHOUT PERMISSION FROM THE PROBATION OFFICE WAS UNLAWFUL

A.    Summary of Point II Argument

Imposition of Condition # 5 in the written judgment (prohibiting Valdez from having deliberate contact with persons under the age of 18, except for his children, without approval from the Probation Office) was procedurally and substantively

unreasonable because (i) the district court offered no reasons at sentencing that might support its imposition, and no such reasons are otherwise self-evident from the record, (iii) the condition is not reasonably related to the any of the purposes of supervision set forth at 18 USC § 3583(d) and USSG § 5D1.3(b), (iii) it involves a greater deprivation of liberty than is reasonably necessary to serve those purposes that underlie those factors, and (iv) it is unconstitutionally vague.

B.  The Record Relating to the Condition Prohibiting
    <u>Valdez From Having Contact With Minors</u>

The PSR recommended that the court prohibit Valdez, as a special condition of his supervised release, from having "deliberate contact with any child under 18 years of age, unless approved by the U.S. Probation Office".  (PSR p. 30)  Defense counsel lodged objection to the proposed condition.  (A:159-60)  The district court modified the condition, which it set out orally at sentencing (A:176-77) and in the written judgment, with the latter providing: "You shall not have deliberate contact with any child under the age of 18 other than your children, unless approved by the Probation Department".  (A:183)

C.  <u>Standard of Review and Applicable Law</u>

The appeal waiver in the Agreement is no bar to this court's review of the no-contact with persons under the age of 18 condition.  *See supra* at p. 17.  We refer the Court to pp. 17-20, *supra*, for the standard of review and applicable law.

D.    The District Court Failed to Set Out Any Reasons for Imposing
      the No-Contact with Persons Under the 18 Condition and the
      Reasons for its Imposition Are Not Self-Evident

    The district court failed to make an "individualized assessment" when it imposed Condition # 5, an error under *Betts*, 886 F.3d at 202, and the basis for its imposition is not. "self-evident" from the record.  Indeed, the condition doesn't reasonably relate to any of the sentencing factors set out at 18 USC § 3583(d) and USSG § 5D1.3(d), and even if it did, the prohibition entails a greater deprivation of liberty than is reasonably necessary to achieve any of these sentencing factors. Vacatur of Condition # 5 is warranted accordingly.  *United States v. Bleau*, 930 F.3d 35, 43 (2d Cir. 2019) (condition prohibiting defendant, convicted of receiving and of possessing child pornography, who had worked at an elementary school, from having direct contact with minors without pre-approval from the Probation Office, amounts to plain error "because it is not obvious from the record why such a condition was reasonably necessary").

    To start, the portion of the condition prohibiting Valdez from having contact with prepubescent children without the Probation Department's approval cannot be deemed to relate to any of the sentencing factors listed at 18 USC § 3583(d) and USSG § 5D1.3(d) because the record is bereft of anything to show that Valdez has ever been or may be a threat to such persons.  And to the extent that the portion of the prohibition concerning persons under the age of 18 who are not prepubescent

27

could be deemed to relate to any of the factors, the prohibition against contact with prepubescent children demonstrates that the condition involves a greater deprivation of liberty than is reasonably necessary.

Notably, Valdez will be serving a five-year term of supervised release beginning January 17, 2031 (his scheduled date of release according to the Bureau of Prisons' website), when the approximate ages of his three eldest children will be: Jeremiah, 18 years old, and Riley and Storiee, 15 years old each.  If Jeremiah, Riley and/or Storiee are themselves parents during the period of supervision, then the prohibition against contact with prepubescent children would pointlessly burden his relationships with both his children and his grandchildren.  *United States v. Myers*, 426 F. 3d 117, 125 (2d Cir. 2005) (prohibitions on contact with family members "implicat[e] a fundamental liberty interest protected by due process"); *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977) (the protections to the sanctity of the family afforded by the Constitution are deeply rooted in "our Nations' history and tradition" and extend beyond parents and their children).  *See also*, *United States v. Weiskopf*, # 20-199, ECF No. 54-1 at pp. 4-5 (2d Cir. Jan. 26, 2021) ("the district court did not conduct an individualized assessment into the necessity of including Weiskopf's grandchildren within the condition on unsupervised contact with minors").[10]

---

[10] Valdez also has three adult siblings.  (PSR ¶¶ 63, 71)  A letter from a sister in support of his sentencing states that he is an uncle.  (DC Dkt. # 162-1, p. 11 of 16)  By prohibiting Valdez from having contact with his nieces and/or nephews who are

Nor are any of the sentencing factors served by the portion of the condition directing no-contact with persons under the age of 18 who are not prepubescent. As to the offense of conviction, this is not a case where Valdez has a history of promoting the prostitution of minors, nor even a history of promoting prostitution at all. In fact, the government's theory at the trial of Martin Concepcion was that as between Concepcion, Valdez and Diaz, Concepcion alone had a history of sex trafficking, and that, as to Valdez, the crime presented one of a single opportunity that in fact lasted less than a month. *See United States v. Doe*, 79 F. 3d 1309, 1322-24 (2d Cir. 1996) (vacating special condition requiring accountant who aided in the filing of a false tax return to inform future clients of the conviction where the record contains no reason "to believe that, without such a restriction, the defendant will continue to engage in unlawful conduct similar to that for which he was convicted, and that such a restriction is, therefore, reasonably necessary to protect the public").[11]

Thus, in previewing the evidence during its opening statement at the *Concepcion* trial, the government urged that Concepcion alone "knew all of the

---

under 18, as well with their children, Condition # 3 unnecessarily burdens his relationships with them and with his own children.

[11] We don't dispute the government's claim in its sentencing memorandum that "the Court can properly rely on evidence from co-defendant Martin Concepcion's trial in connection with [Valdez's] sentencing". (DC Dkt. 167, p. 2, note 1)

tricks of the trade to get that business off the ground" and that "he showed Bigga and Rico exactly ... how to sell Camilla for sex" (A:51), while underscoring how Diaz, an expected witness, "will tell you how [Concepcion] taught him and Bigga everything they needed to know to sell Camilla for sex". (A:53)

In keeping with that theory, the government elicited Ms. Rodriguez's testimony that Concepcion rejected Valdez's proposed prices for her encounters, and ultimately set all prices. (A:80) And as to Diaz, the government elicited his testimony that the day after they met Ms. Rodriguez, Concepcion proposed the prospect of prostituting her with Valdez and Diaz (direct examination):

> Q. What specifically, if anything, do you recall Tito saying about selling Camilla?
>
> A. Said this was his lane.
>
> Q. What did you understand Tito to mean by that this was his lane?
>
> A. That he did this before.
>
> Q. Did what before?
>
> A. Prostitute.
>
> ****
>
> Q. Before this conversation between Tito and Bigga, had you ever heard Bigga talking about prostitution?
>
> A. No.

(DC Dkt. # 138, p. 273-74)   In this connection the government elicited Diaz's testimony that Valdez had been "like a big brother" to him before they met Ms. Rodriguez (DC Dkt. # 138, p. 174), and thereby suggested that if Valdez had had previous experience in sex trafficking, then Diaz would have known about it.

Nor does the fact that Valdez (and Concepcion) had sexual intercourse with Ms. Rodriguez on the night that they met suggest that Valdez is a threat to persons under the age of 18.  Ms. Rodriguez acknowledged in her testimony that "at the beginning" she told Valdez that she was 18 years old [and that she had a daughter], when in fact she was 16 years, 8 months (A:57, 97)  Moreover, there is no evidence that Valdez and Ms. Rodriguez had sexual relations other than on that first night.

Significantly, despite the facts that Concepcion alone had experience as a sex trafficker, and that he too had sex with Ms. Rodriguez on the night they met, the judgment entered against Concepcion includes no special condition requiring Concepcion from having contact with minors.  (DC Dkt. # 165)

It's true that in New York in 2016, Valdez was convicted of Endangering the welfare of a child, a misdemeanor, after he was charged with Rape in the third degree, a felony, in an accusatory instrument alleging that in February 2015, when he was 22 years old, Valdez had sexual intercourse with a female who was 15-years

old.[12]  (PSR ¶ 55)  But either standing alone or in combination with the instant conviction, the conviction does not make the reasons for the imposition of Condition # 5 "self-evident" -- especially in light of some of facts surrounding the earlier conviction..

If the allegations in the accusatory instrument there were entirely true, then the conviction, a misdemeanor that does not require registration as a sex offender (*see* NY Correction Law § 168-a), as well as the sentence, which requires no supervision , are startling. [13]

Indeed, defense counsel at sentencing here states that the victim there is Sierra Carter, the person identified in the PSR as the mother of Valdez's eldest child, six-

---

[12]  The only provision of the crime of Endangering the welfare of a child, codified at New York Penal Law § 260.10, that Valdez could conceivably have been convicted under is this portion of subsection (1):

A person is guilty of endangering the welfare of a child when:

1.    He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old….

[13]  New York Penal Law § 65.05, entitled "Sentence of a conditional discharge", provides in part: "[T]he court may impose a sentence of conditional discharge for an offense if the court, having regard to the nature and circumstances of the offense and to the history, character and condition of the defendant, is of the opinion that neither the public interest nor the ends of justice would be served by a sentence of imprisonment and that probation supervision is not appropriate".  The statute adds that the conditions of discharge shall be "as the court may determine" and that its term is one-year in the case of a misdemeanor.

year old Riley (counsel is excluding Valdez's stepson). (A:153-54; PSR ¶ 69) According to the PSR, Ms. Carter was 24 years old in July 2022 (*id*.), which means that she was older than age 15 in February 2015, possibly even 17 years old. Indeed, the facts that Riley is six and Ms. Carter is 24 in 2022 old makes it that much more likely that Ms. Carter was either very close to 17 or actually 17 in February 2015. These facts likely provide the explanation for the State's agreement there to a disposition that involved no supervision and no registration. Worth noting too, Valdez and Carter appear to have been in a significant relationship, as, according to counsel, they eventually moved in together with Ms. Carter's aunt. (*Id*.)

Also telling, we submit, is the district court's imposition of the minimum term of five years of supervised release -- where the maximum possible term was life; there's an apparent incongruency between the suggestion that he is a realistic threat to minors -- but only for the five-year minimum term.

Finally, the absence of any findings by the district court that Valdez is a threat to persons under the age of 18, combined with the court's decision to sentence Valdez to no more than the mandatory minimum of five-year term of supervised release (where his conviction carried a term of up to life), standing alone, suggests that the district court itself didn't conclude that Valdez is a significant threat to minors.

E.    Condition No. 5 Is Unconstitutionally Vague

Due process requires that conditions of supervised release be "sufficiently clear to inform [the defendant] of what conduct will result in his being returned to prison." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003). A condition is unconstitutional if is so vague that people "of common intelligence must necessarily guess at its meaning and differ as to its application." *Id*.

Condition # 5 is overbroad and unconstitutionally vague. It appears to require Valdez to stay away from family events where children other than his own may be present, as well as public places where persons under the age of 18 invariably are present, such as stores, malls, museums, and sporting events. In *United States v. Jenkins*, 854 F. 3d 181, 194 (2d Cir. 2017), this Court vacated a similar condition, concerned that:

> under this condition, Jenkins is prohibited … from interaction with family members or friends who might have children under the age of 18 unless he goes through a preapproval process with the Probation Office which presumably would entail some sort of investigation and finding by that office. This restriction would apply with full force to all routine family interaction—for example, Thanksgiving dinners or seders or christenings

And as to a similar condition, which is indistinguishable from the one we challenge here, the Court noted:

> If, for example, members of a little league baseball team were soliciting in front of a supermarket, could Jenkins approach them

34

> [ ]?  Common sense would say "yes" but the problem for Jenkins
> would be that the consequences of an incorrect guess would be
> sufficiently serious that he would be ill advised to run any risks at all.

*Id.* at 195-95.  For these reasons among others, the Court determined that the special

conditions relating to no-contact with persons under the age of 18 were substantively

unreasonable.  *Id*. at 196.

Based on the foregoing, the court should vacate Condition # 5 and remand to

the district court with instructions to enter a modified judgment that does not contain

the special condition prohibiting Valdez from having "deliberate contact with any

child under the age of 18 other than [his] children, unless approved by the Probation

Department".  (A:183)

<u>CONCLUSION</u>

For the foregoing reasons, imposition of each Condition # 3 and Condition #

5 was unreasonable, and the case should be remanded for entry of a modified

judgment with these conditions deleted.

Dated:      January 5, 2024
            New York, New York

Respectfully submitted,
<u>s/Andrew H. Freifeld</u>
Andrew H. Freifeld, Esq.
P.O. Box 3196
New York, New York 10008
(917) 553-6030

Attorney for Defendant-Appellant
   Michael Valdez

35

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) because this brief contains 8,309 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)**.**

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point font size, using Times New Roman style.

Dated:        January 5, 2024
              New York, New York

                              s/Andrew H. Freifeld
                              Andrew H. Freifeld
                              Attorney for Appellant
                              Michael Valdez

36

ADDENDUM

1.  Section 1591, of Title 18, United States Code, provides in part:

    Sex trafficking of children or by force, fraud, or coercion.

    (a)   Whoever knowingly—

        (1)   in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

        (2)   benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

            knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

    (b)   The punishment for an offense under subsection (a) is—

        (1)   if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

37

        (2)    if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

(c)    In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

\*\*\*\*

(e)    In this section:

\*\*\*\*

        (3)    The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

38